Thank you, Your Honor. My name is Tim Ford. I represent Sap Kray. I would hope to save perhaps three minutes for rebuttal if I can. This is a tragic and very emotional case involving the death of a police officer, the paralysis of my client, resulted in a conviction of aggravated murder, a sense of life in prison without possibility of parole, of a man with no prior criminal record. It involves several constitutional issues that all arise from the fact that the Washington Court of Appeals determined that Mr. Kray was not entitled to defend himself even when he was attacked with deadly force by Tacoma police officers with a M-16 type rifle and also with a device called an R-137, which is also an explosive-driven firearm. And the court determined that on grounds that had no precedent in the state of Washington, that were not tried at the trial or even discussed at the trial by the parties, and that were not submitted to the jury and that indeed are directly contrary to controlling authority in this court. How different is it from not being an aggressor? They said, well, if he precipitated the danger, he's not entitled to defense. Your jury was instructed if he's the aggressor, he's not entitled to the defense. Is there any difference between those two? Yes, there's an absolute difference, Your Honor. The aggressor instruction dealt with – well, there was an argument as to whether the aggressor instruction would deal with only Mr. Kray's behavior toward the Tacoma police when he was confronted by them on the morning of August 27th. That would be the traditional application of the aggressor instruction. The argument that was allowed in this case was that because Mr. Kray had displayed a firearm, held it up sideways, not pointed at anyone the night before in the city of Auburn, that that made him an aggressor. That was heavily contested but was allowed by the trial court. Those were the actions that were the basis for the aggressor instruction that were challenged on the Washington appeal. The create the need standard, which was completely unique in Washington law, has never been applied before or since except sometimes the language is used in the context of an aggressor instruction. If I provoke a person directly in front of me, they respond. I can't defend myself. The create the need standard that was applied in this case, this case only, no case before, no case since in the history of the state of Washington. Of course, this case is unpublished, so it's not even law of the state of Washington. That had to do with the fact that Mr. Kray had committed a crime the night before, pointing his gun at the tires of his wife. Mr. Ford, how does the interpretation of Washington law by the court of appeals in Washington show here a violation, clear violation of clearly established federal law so as to warrant habeas relief? It does not. What happens here, well, in one way it does because the violation or the interpretation of Washington law, we would say, among other things, is so unexpected, so unprecedented, so unpredictable that it was a violation of the due process principle of the Bowie v. Columbia case. But more importantly, because it was unexpected. Right, because it was not precedent in Washington law. Nobody anticipated it at trial. Nobody was arguing about it then. The actual Bowie principle would apply at the moment of the event, actually. But, of course, at trial, your client received, did get the self-defense as well as the aggressor instruction. That's correct, but he got self-defense with an exception that we believe, and it was argued, was not consistent with Washington law, and the Washington courts never resolved that issue. So there's never been a determination by the Washington courts that the instructions given this jury were correct under the Washington law, and we think that they were not. And we think that the one evidence of that, if the court needs evidence of that, is that the Washington Court of Appeals did not affirm on the ground of what was instructed at trial. They changed the rules after the fact. I'm sorry, Your Honor. No, no, I interrupted you too quickly. You were trying to finish your. However, when we read Gilmore, it says right in there, outside of the capital context, we have never said that the possibility of a jury misapplying state law, giving rise to federal constitutional error, is to the contrary. We've held instructions that contain errors of state law may not form the basis for habeas relief. And that's absolutely correct. If the Washington Court of Appeals had affirmed the instructions as given to the jury, there would be very little likelihood that there would be a federal constitutional issue arising from that. I guess then I'm trying to figure out what constitutional issue do I have? Where do I go for this case that says that the Washington Court determining on its own about a self-defense instruction and the giving also of an initial instruction is a violation of the Constitution? You don't need to go for that, Your Honor, because the Washington Court of Appeals didn't do that. Well, but I've got to find something in the Constitution or in the Supreme Court precedent to suggest that what the Washington State Court did was wrong. But what the Supreme Court precedent that's directly in point is Cole v. Arkansas. Exactly the same thing. It's due process, then? Well, it's exactly the same thing they have. Yes, exactly the same thing that happened there. If it's due process, then can I find any evidence here that the state was relieved of a burden or an element of the charge defense beyond a reasonable doubt? Absolutely. Why? They were given a self-defense instruction. They were also given the other instruction which had to do with the initial aggressor. That didn't relieve the state of any burden or any element of the offense. Well, again, that was not the error we're complaining of. That's the error we were complaining of in the Washington Court of Appeals. They decided not to deal with it. They affirmed on a completely different ground. It was never given to the jury. It was never argued about at trial. It is based on a lack of evidence that doesn't exist because the issue wasn't placed at issue at trial. It's as if the jury was instructed that he's guilty if there's X and Y, and the Washington Supreme Court of Appeals said, well, we don't care about whether there's X and Y. He's guilty because of Z. Well, there's many reasons why that's not right. We often have in front of us issues such that in a Crawford situation, for instance, where one may not have been able to confront the witness, but we look at a harmless error review. Even if the state court did not look at the harmless error review, we look at a harmless error review. So how is what Washington State did any different than looking for harmless error review? Because they applied the wrong standard of harmless error review. Effectively, they did that. But the problem is that there's a very special standard of harmless error review when an element of the offense is not submitted to a jury. It's a very limited harmless error review under Nader v. United States in which it has to be shown that the findings made by the jury were absolutely compelled. They were either conceded by the defendant, taken out of issue, or the findings made by the jury actually encompassed the findings that were required. But the Washington Court of Appeals found that Mr. Cray wasn't entitled to a self-defense instruction at all under the record that was before the court, didn't they? On the basis of a factual determination that was never submitted to a jury and that was clearly in issue. I mean, the primary basis, Your Honor, was that the police force was not excessive. And this court has held in a case almost directly in point, actually in a case involving less severe force, that police force was excessive. So obviously a jury could have found differently with regard to this police force being excessive and with regard to this, quote, creating the need. These are factual questions, and they were never given to a jury, and there was conflicting evidence, and their answer on post-conviction was, well, you would have had to put on more evidence in order to meet these additional elements. Well, of course we would have. That's the purpose of a trial. In a trial, you tell the person what the rules are, and they put on evidence. And now they're saying, oh, well, you can't complain about not being told what the rules were, because if you were told what the rules were, you would have had to put on evidence. Well, absolutely we would have, and we put on extensive testimony in post-conviction, long declarations showing exactly what kind of evidence we would have made, put on exactly what kind of decisions we would have made. Trial counsel has sworn that he would have made different decisions with regard to fundamental things such as pleas, defendants trying or testifying, and the evidence that was put on the case. We put on three experts to say that the Washington Court of Appeals determination is factually wrong, and this court has held it's factually wrong, and they're saying they don't have a right to a jury trial on it. I guess the problem that I have, again, is that I'm looking at what Supreme Court precedent I have to look If I read Gilmore, it suggests that confusing instructions on state law, which prevent the jury from considering an affirmative defense, is not violative of due process. But that's not what happened. Your Honor, that was what would have happened if they would have followed ordinary procedures and dealt with the issues at trial. But they decided the case on a completely different basis than the jury decided. So Gilmore has nothing to do with this case. If I look at the structural error, which requires reversal, I find in Supreme Court cases complete denial of counsel, biased trial judge, racial discrimination in selection of a jury, denial of self-representation, defective reasonable doubt instruction. But I don't find anything in Supreme Court precedent which suggests that what happened here was wrong. Cole v. Arkansas and Presnell v. Georgia both say that appellate courts cannot do exactly the same thing that this court did. In Cole and Presnell, exactly what happened is the jury was instructed on state law in a way that the state court on appeal was uncomfortable with, and the state court said it doesn't matter whether you were instructed right or not on that theory because you're really guilty on another theory. That is a fundamental denial of due process and the right to a jury trial, and it's been absolutely clear since Cole. We're not talking here in this case about being guilty on one theory or another theory. The guilt was presented by the state. There was no element of the defense or of the state's burden which was even shifted. We're talking about an affirmative defense, which neither one of those cases concerned itself with. This is not an affirmative defense, Your Honor, in Washington. This is an element of the offense. It's absolutely clear and it's conceded on this appeal that self-defense, the burden is on the prosecution to disprove self-defense to a jury beyond reasonable doubt in Washington. It's an element, and the element contains, now they say in this case, an element of disproof of excessiveness of police force. That's always been a jury question. No jury got to rule on it in this case, and everything in this case depends on a judicial determination of that issue which was contested, which was never put on notice, and which was dead wrong according to this court. We're entitled to have a jury decide whether or not these elements apply in this case, and we never did. Was there no issue of excessive or unreasonable force as the case was tried? It was not. There was not. It was not an issue. It never became an issue. It's never been an issue in Washington courts. There's never been a single case that made it an issue until this unreported decision. How much force can the police use under the law of the case as it was tried? There are two different issues. One is the fact that they shot him inside his house, inside the doorway of his house, with what this court has held as a deadly weapon that cannot be used on unarmed people, and he was unarmed. That was one use of force. Then the police officer walked in and there was testimony from the closest police officer that he shot our client with an M-16 rifle in the belly and paralyzed him. And then the shot that our client allegedly fired occurred after that. And in defending that, I don't want to use up all your rebuttal time, maybe you want to save it, but I would think part of the defense is, well, the police shot first. That was unreasonable. That was excessive. But that wasn't made an issue for the jury. That was not allowed. That would be an issue. That would be an argument. That's a great argument. We never got a chance to make it to a jury. The Court of Appeals decided it by fiat without ever putting it in issue or ever submitting it to a jury. I'd like to save at least a little bit of time if I could, please. Thank you. May it please the Court. I'm John Sampson, Assistant Attorney General representing the Respondent. The district court correctly denied relief in this case because the state court adjudication was not contrary to or an unreasonable application of Supreme Court precedent. Under the Anti-Terrorism and Effective Death Penalty Act, there is a restriction placed on the ability to obtain habeas corpus relief, and that restriction is there must not only be a constitutional error and the state court's adjudication of that error must not only be erroneous, it must be objectively unreasonable. And Petitioner did not show that in this case. Their claim that they've argued this morning is that the Court of Appeals and its analysis of the jury instruction claim somehow created a new rule of state law that was unfair to them and that violated their Sixth Amendment right to a jury trial. The first point is that the Sixth Amendment does not apply on appeals, so there is no Sixth Amendment violation shown in this case. The violation would be, I would think, in its effect on the trial. They're saying there was an error in trial and we never got to deal with it. But, Your Honor, they are not pursuing the alleged error in trial. What counsel has just stated is he's not challenging the instruction, he's challenging the state court of appeals' decision on that claim. If he were challenging the instructional error, then we fall back on Gilmore, and Gilmore says that there's no federal error here. The alleged error in a state law instruction is not a basis for federal relief. Moreover, the jury was presented with the self-defense instruction. The jury considered the issue of self-defense. They considered the issue of whether he was an initial aggressor. And the instructions given to the jury placed on the state the burden of proof beyond a reasonable doubt that he was the initial aggressor in order for the self-defense claim to not be allowed. Well, we don't know what the jury did. Either it found that he was the aggressor, or for some other reason it found that he wasn't acting in self-defense. Yes, Your Honor. And the jury found that, so he had a Sixth Amendment right. What their claim at trial was, was that there was an error of state law in the giving not of the self-defense instruction, but in the giving of the aggressor instruction. And if this court were to go that far back, under Washington law, as long as there is some evidence to support the giving of the aggressor instruction, the court can give the instruction. So even if the court were to go that far back, there's not an error that's been shown. There's been no showing of actual and substantial prejudice, which is necessary. But the claim before this court is whether the state court of appeals, in its analysis, violated due process. Again, the Sixth Amendment doesn't apply, so we're simply left with the due process claim. And they have not shown that, and they have not shown that the state court adjudication was objectively unreasonable. Well, their argument is that the theory that the state appellate court used was so different and so surprising that it violated due process. And, Your Honor, it's meant that it was not that case. The state court of appeals analyzed this case, referring back to prior Washington case law. They referred back to two cases, Valentine and Bradley, and they explained why those cases do not require the result that Mr. Cray had been asserting. And they also relied on an Alaska case that cited to a Washington State Supreme Court case. And finally, they relied on Westland, which was a Washington appellate court decision from 1975. So this was not an unforeseen development in the law that was just arbitrary and failed to give fair notice to the defendant. The court applied existing law, applied it to a unique factual situation that was before it in the case. There was no violation of due process. But even if there was, again, that's not enough to obtain relief. The petitioner has to show that the state court decision rejecting that claim on the personal restraint petition proceeding was objectively unreasonable, and he has to show that he suffered actual and substantial prejudice, and he has failed to show either of those. I know the court ultimately gave both the self-defense and the aggressor instruction at the trial, but at the trial proceeding, those instructions were being settled. Was the issue of entitlement discussed to the such instructions, and was it addressed in the context of what the Washington Court of Appeals ever finally did? Your Honor, I apologize. I don't know the extent to how much it may have been discussed. I know that the self-defense instructions were offered and were given. The state then did a supplemental request for an instruction on the initial aggressor instruction, and those instructions were given. The fact is that we know that the jury was instructed both on self-defense and on the aggressor. The jury considered those, and for whatever result the jury reached, they rejected the claim of self-defense. Well, what I'm driving at is was the, in this case, Mr. Craig, surprised by the ruling of the appellate court in Washington, or had this issue actually been flushed out before the trial court? Your Honor, I don't believe that he was surprised. Again, the State Court of Appeals relied on prior case law, and what they were doing were they were the State Court of Appeals said that as a matter of state law, applying these prior cases, a defendant does not have the right to self-defense to kill a uniformed police officer who is merely doing his job when the defendant is the one who created the situation. It would be no different than if a defendant was driving down the street, he was pulled over by the police officer, the defendant was holding a gun, the police officer pulled out his gun, and the defendant then shot him. There'd be no claim of self-defense there. There's no legitimate claim here. And the State Court of Appeals decision was not the type recognized in Bowie. It is more the type recognized by the Supreme Court in Rogers v. Tennessee. In that case, the Tennessee Supreme Court eliminated the one-year-and-a-day rule for murder, where the person had to die within a year and a day in order for the assault to become a murder. The court eliminated that rule and allowed the defendant to be convicted of the murder. The same rationale applies here. He was not convicted of a crime for which he was not charged. He was not convicted on basis of evidence that was not considered by the jury. All the state court did here was apply state law to say that any error in the instructions was harmless because he was not entitled to those instructions in the first place. So actually, he received more of a benefit than he should have ever received in the first place. The ground on which he's not entitled to the instruction is that he created the situation. Your Honor, that's one of the reasons, yes. Is that a fact that has to be found by a jury? No, Your Honor. In this case, the state court found as a matter of state law, and even though this is an unpublished decision, it's still a decision binding on this court under the Supreme Court's decision in Bradshaw v. Ritchie, the state court found as a matter of state law he would not be entitled to a self-defense instruction at all. And what they could have done is they could have – the judge could have, in the trial, could have said, I'm not going to give you a self-defense instruction, you're not entitled to one, and that would have been affirmed on appeal. But what the trial judge did was said, you have a self-defense instruction, the jury will consider it. There's also this initial aggressor instruction, the jury can consider that. The jury considered those, they rejected those. There is no violation, even if he had a right to a self-defense instruction, there's no violation. But he had no right to that. Finally, Your Honor, I would just say that – The other fact question, I suppose, is whether the force is excessive. I think the appellate court said he's not entitled to the instruction if the amount of force used by the police was not, I don't know what word they used, excessive. Yes, Your Honor. Is that a finding of fact, or is that a – I mean, sort of a directed verdict that the force wasn't excessive. In this situation where the court is applying a harmless error analysis, it's different than a situation, for instance, if this was a summary judgment in a civil case. In a summary judgment in a civil case, that might be a question of fact that goes back. But in this case, what the court is doing, as appellate courts do all the time, is reviewing a record that has been established and reviewing that record to determine whether an error in the instructions was harmless or whether it was prejudicial. And in doing that, the court can look at that factual record and make those determinations. It doesn't have to say there's a new trial because there's an issue of fact of whether it was excessive or not. The court held, as a matter of state law, he would not have been entitled to a jury instruction based on the factual record before the court. That is a proper ruling by the state court. And it's a ruling that we would just – Could I go to the confrontation clause issue? It seems to me that here there's clear Supreme Court precedent that evidentiary privileges and other state laws must yield to ensure the level of cross-examination demanded by the Sixth Amendment. You'd agree with me about that? Yes, Your Honor. And so why is this not then a violation that we should award on habeas? It's not a violation because the privilege must yield when it's an area of critical importance and there's no other evidence available. Well, but that isn't exactly what it said. It isn't just that there's no other evidence involved. Delaware v. Van Arsdale suggests that we're looking at the importance of the witness's testimony, we're looking at the strength of the prosecution's case, and we're looking at the extent of the cross-examination otherwise permitted. In this particular situation, the testimony of these police officers was very critical in this particular situation. So we're with the people who have the most critical testimony of the particular self and no one is allowed to cross-examine them about what they said in the beginning. That's not accurate, Your Honor. They were allowed to cross-examine them about what they said in the beginning. And, in fact, all those inconsistencies were presented to the jury. Officer White testified that he saw Officer Lowry shoot first. He saw the puff of white from Officer Lowry's gun and then Mr. Crayfire. Officer Wolf was impeached with his prior inconsistent statements that he, right after the event, he did not know who shot first. He could not distinguish between the caliber of the weapons being fired, and he admitted that he learned otherwise, and that was a quote. He learned otherwise about the order of the shots. Sergeant Steele testified on direct that he believed Mr. Cray fired first, but he admitted on cross-examination that his initial statement was he could not distinguish between the weapons being fired. He didn't know who fired first. Sergeant Habib admitted he testified essentially that he heard a boom followed by a pop, pop, pop, the boom being Mr. Cray, the pop, pop, pop being the SWAT weapons. And he admitted his initial statement was he heard automatic fire coming solely from Mr. Cray. Was there any point at which the initial statement and thereafter the inconsistency that was brought out at trial was itself inconsistent with what was said at the post-shooting debriefing, the CISD event? Your Honor, the inconsistencies were what was said after the first meeting, which was not a CISD meeting. Right. And that was not privileged, and they could go into that. Right. So those were the initial statements. Then you have the CISD debriefing, which is rule privilege, and then you have other inconsistencies that are developed on which the officers are crossed. And those were all brought out, all those inconsistencies, including the fact that after the first CISD there were some corrected reports, some supplemental reports that still didn't correct everything, and then the information changed. I guess what I'm asking is was there something said at the CISD that was inconsistent with what the officers originally said or testified to that they were never crossed on? Again, Your Honor, I don't know what exactly was said because that was privileged, and I'm not entitled to know what was actually said. But they were cross-examined, and it did come out that they made changes, and the reason they made changes was because of the forensic evidence that was told to them, as to there was actually only one shot by Mr. Gray. And Sergeant Habib testified that his changes came about because of a walk-through where everybody got together and discussed the information and the officers talking to each other. So this claim that they needed the CISD evidence to be able to show that the officers got together and made a consistent story, that was brought out. Was the trial court and the Washington Court of Appeals privy to what had been said, even on MTM review, to what was said at the privileged meeting? It's my understanding there was some information that was sealed that they were allowed to review. I'm not sure the extent of what that information was, though. And I believe that the prosecutor did not want to go deeply into what was said, and the reason is that it's important for these officers to be able to have this debriefing session, and it's equivalent to a patient, doctor, or attorney-client privilege. It's important for them to have this. Well, but the problem comes in that under the case law in the Supreme Court, we're not really talking about whether it's important, this evidentiary privilege. We're talking about it may be important, but so what? I mean, the husband-wife-spouse privilege is undone because of the Sixth Amendment. So we've got a privilege that we're really looking at here, and we're trying to decide. So you're really relying then on the extent of the cross-examination otherwise permitted. The extent of the cross-examination, the evidence, and the fact that, again, what this all goes to is whether he's entitled to self-defense, which the state's Court of Appeals determined he's not entitled to self-defense anyways, so it really doesn't matter. As the state Court of Appeals said, the evidence was clear he was the one who shot Officer Lauer, and that was what the state needed to prove, and the state was able to prove that. And finally, Your Honor, I see I'm out of time, but because the state court decision, even if this court were to conclude it was erroneous and clearly erroneous, because it's not objectively unreasonable, relief must be denied. Thank you. Thank you. The last point, I think the ultimate holding of the Washington court was, even though this is a constitutional violation, it's harmless because there was no entitlement to self-defense. Think about what that means. That means that unless the police behavior is excessive constitutionally, they can kill you and you can't do anything to respond. That's what they held. Now, that makes the excessiveness of force a very important fact, and a jury was not allowed to hear that and was not allowed to consider it, was not instructed on it. The Washington Court of Appeals did that for itself. By the state's theory, if there's no Sixth Amendment on appeal, then an appellate court can say, well, we found a lot of error in this case. However, this guy is plainly guilty. When we get down to trial, we'll order the trial court to direct a verdict. There would be no Sixth Amendment violation because the Sixth Amendment doesn't apply on appeal. Of course it does. That's what Cole says, Fresnel says. You can't affirm a conviction on a different ground than it was tried and a different ground than it was given to the jury, and that's what they did here. Thank you. Thank you, Your Honor. Case 0835711, Cray v. Stewart, is hereby submitted. Case 0835338, Sabin v. Estrue, has been submitted on the briefs in this particular matter and therefore will not be heard. Case 0835471, Maring v. P.G., Alaska Crab Investment Company.
judges: Canby, Smith N. R., Pro